UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Michael Horton, | ) | CASE NO. 5:09 CV 1737 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Warden, Trumbull County Correctional | ) | **Memorandum of Opinion and Order** |
| Institution | ) | |
| Respondent. | ) | |

This matter is before the Court upon the Report and Recommendation of Magistrate Judge Limbert (Doc. 10), which recommends granting the Petition for Writ of Habeas Corpus now pending before the Court. For the following reasons, the Report and Recommendation is ACCEPTED.

**INTRODUCTION**

Petitioner, Michael A. Horton, commenced this action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is incarcerated following his conviction after trial on one count of murder in violation of Ohio Rev. Code § 2903.02(A) and one count of improperly handling a firearm in a motor vehicle in violation of Ohio Rev. Code § 2923.16(A).

1

Petitioner pled guilty to one count of having a weapon while under disability in violation of Ohio Rev. Code § 2923.13(A)(3).  He was sentenced to an aggregate term of 25 years to life in prison.  This matter has been fully briefed and the Magistrate Judge has issued his Report and Recommendation recommending that the Petition be granted.  Respondent has filed objections to the Report and Recommendation and petitioner has filed a response to the objections.

### STANDARD OF REVIEW

Rule 8(b)(4) of the Rules Governing Section 2254 Cases in the United States District Courts provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify in whole or in part any findings or recommendations made by the magistrate.

### DISCUSSION

The Petition sets forth a single ground for review:

> Ground One:  Where the evidence in a murder trial would support an acquittal on the murder and a conviction of one or more lesser or inferior offenses, a criminal defendant is deprived of due process where the trial court refuses to instruct the jury on the lesser or inferior offenses.  Fifth and Fourteenth Amendments to the United States Constitution.

Petitioner, however, stated the following in his traverse:

> With respect to his sole ground for relief, Mr. Horton elects to proceed only with his claim that the state appeals court unreasonably applied *California v. Trombetta*, 467 U.S. 479 (1984) when it held that Mr. Horton failed to present sufficient evidence to support a self-defense instruction. *State v. Horton*, No. 2007-CA-00085, 2007 Ohio App. LEXIS 5657 (Ohio Ct. App. December 3, 2007).

Magistrate Judge Limbert therefore did not consider any other claims.  Respondent conceded that petitioner's claim as it relates to the self-defense instruction is not procedurally barred, so

2

Magistrate Judge Limbert did not address any procedural bars to review. The Magistrate Judge concluded that the petition should be granted as it relates to the self-defense instruction. The Court accepts this determination.

Respondent objects to the Magistrate Judge's findings. Respondent first argues that the challenge to the trial court's decision not to give a jury instruction on self-defense is a non-cognizable challenge to an issue of state law. Respondent next argues that even if the state court's decision could be challenged on habeas review, the decision is entitled to AEDPA deference because it was not unreasonable in light of the evidence presented.

**A.      The trial court's decision not to give an instruction on self-defense is cognizable on habeas review.**

The Magistrate Judge, relying on *Trombetta v. California,* 467 U.S. 479, 485 (1984), found that a state court's decision not to give a jury instruction on self-defense was cognizable on habeas review. *Trombetta* held that fundamental fairness requires that criminal defendants be afforded a meaningful opportunity to present a complete defense. Respondent argues that the Magistrate Judge's reliance on *Trombetta* was misplaced because *Trombetta* deals with the state's failure to preserve exculpatory evidence, not with a trial court's refusal to instruct on self-defense, and is thus not controlling precedent. Respondent's objection is not well-taken. The Sixth Circuit has previously addressed this very issue, holding the following:

> We hold that the right of a defendant in a criminal trial to assert self-defense is one of those fundamental rights, and that failure to instruct a jury on self-defense when the instruction has been requested and there is sufficient evidence to support such a charge violates a criminal defendant's rights under the due process clause. It is indisputably federal law as announced by the Supreme Court that a defendant in a criminal trial has the right to "a meaningful opportunity to present a complete defense." *California v. Trombetta,* 467 U.S. 479, 485 (1984); *see also Chambers v.*

3

> *Mississippi,* 410 U.S. 284, 294 (1973); *Harrington v. Jackson,* 1 Fed. Appx. 367, 2001 U.S. App. LEXIS 532 (6th Cir. January 10, 2001).  A necessary corollary of this holding is the rule that a defendant in a criminal trial has the right, under appropriate circumstances, to have the jury instructed on his or her defense, for the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions.

*Taylor v. Withrow,* 288 F.3d 846, 851 (6th Cir. 2002) (parallel citations omitted).  Respondent does not address *Taylor* in its objections.  For the reasons set forth in *Taylor* and in the Magistrate Judge's Report and Recommendation, the Court agrees with the Magistrate Judge.

**B.     Sufficient evidence was presented to warrant a jury instruction on self-defense.**

Respondent objects to the Magistrate Judge's conclusion that sufficient evidence was presented to warrant an instruction on self-defense.  Respondent argues that the Magistrate Judge improperly substituted his own application of Ohio law for that of the state courts, and cites to evidence in the record contradicting the elements necessary under Ohio law to establish self-defense.  Upon review, the Court agrees with the Magistrate Judge.  Although respondent points to other evidence in the record that it contends contradicts the elements of self-defense, it is the job of the jury to weigh the evidence and determine whether petitioner acted in self-defense.

Under Ohio law, a defendant must establish three elements to prove self-defense:  (1) that he was not at fault in creating the situation giving rise to the affray; (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was the use of force; and (3) that he must not have violated any duty to retreat or avoid the danger.  *State v. Melchior,* 381 N.E.2d 195, 199 (Ohio 1978).

**1.     Sufficient evidence was introduced to show that petitioner was not at fault in creating the situation giving rise to the affray.**

The Magistrate Judge found evidence to support the first element in that petitioner was sitting in the passenger seat in a car when the victim ran up to it.  Respondent argues that petitioner went to the party "clearly aware that he was unwanted," that a previous "problem" existed between petitioner and the victim, and that petitioner "had every opportunity to either flee or give consent [to the driver of the vehicle that he was in] to leave."  Such evidence, respondent argues, shows that petitioner was at least partially at fault in contributing to the affray.  The cited testimony, however, does not prevent a reasonable jury from concluding that petitioner was not at fault in creating the situation giving rise to the affray.  As respondent acknowledges, petitioner called ahead to see if it would be a problem if he attended the party, and was told that "nothing was going to happen."  (Tr. Vol. II, 401:20-21.)  Petitioner remained in the car, which was parked on the side of the road with the engine running.  (Tr. Vol. III, 705:15-17.)  The driver of the car testified that three girls approached the passenger side of the vehicle, walking in front of the vehicle, and talked with petitioner, though the driver could not hear what they were saying.  (Id. at 706:23-707:7.)  An individual then approached the driver's side of the vehicle, looked in the window, and said:  "Is this who I'm supposed to be holding Ricky back from?"  (Id. at 707:11-16.)  The driver further testified that he then tapped petitioner on the chest and said "let's go, something's wrong. . . ."  (Id. at 711:3-10.)

It is at this point respondent contends that petitioner had every opportunity to leave and "chose not to agree with the driver's request to leave."  The driver, however, testified that "[r]ight after that, I just heard footsteps."  (Id. at 711:11-12.)  He further testified:  "And then I heard the footsteps, and I seen like a flash out of the corner of my right eye come and it was someone running on the side of the vehicle; and then he hit Mike."  (Id. at 711:22-25.)

Additionally, the driver testified that he was trying to get the car moving: "as I heard the footsteps and I seen the flash, I was trying to pull the gear shifter down." (Id. at 712:11-13.) Nothing in the evidence cited by respondent shows that petitioner chose not to agree with the driver's request to leave, especially the driver's own testimony, which shows that he was attempting to get the car moving as soon as he heard footsteps approaching the vehicle. The evidence cited by respondent is consistent with a jury reasonably finding that petitioner was not at fault in creating the circumstances giving rise to the affray.

> 2. **Sufficient evidence was introduced to show that petitioner had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was the use of force**.

The Magistrate Judge found that evidence could support the second element in that evidence showed the victim ran up to the passenger side of the vehicle, he reached inside the vehicle, the driver of the vehicle observed a beer bottle on petitioner's lap after the shooting, and petitioner claimed to have been struck by a beer bottle. The Magistrate Judge also cited law holding that a beer bottle can be a deadly weapon. Respondent argues that no evidence was submitted to the jury that petitioner actually believed he was in imminent danger of death because he did not testify as to his subjective state of fear and there was no evidence presented that he was ever fearful of the oncoming danger. Respondent argues that in fact the evidence shows that petitioner was not fearful. In support, respondent states that petitioner came to the party carrying an illegal loaded weapon, that he chose to remain at the party after the victim's friend looked in the driver's side window and asked, "Is this who I'm supposed to be holding Ricky back from?", and did not agree to leave or attempt to flee the vehicle "in spite of clear warning from the driver."

6

The Court has already addressed respondent's characterization of the evidence as showing that petitioner "chose" not to leave in its analysis of the first element, and will not repeat it here.  Additionally, respondent does not object to the Magistrate Judge's determination that a beer bottle can be a deadly weapon.  Whether petitioner's arrival at the party with a loaded gun shows that petitioner did not believe he was in imminent danger of death or great bodily harm is for the jury to decide.  Further, a defendant need not testify to establish self-defense if he can prove self-defense through the testimony of other witnesses.  *See State v. Seliskar,* 298 N.E.2d 582, 582 (Ohio 1973) ("If a defendant cannot provide evidence on the issue of self-defense other than his own testimony, then, in order to avail himself of the defense, he must testify."); *State v. Lyons,* No. 43513, 1981 Ohio App. LEXIS 13428, at *4 (Ct. App. Dec. 3, 1981) ("[I]n many cases an accused may exercise his right to silence and still prove self-defense through the testimony of other witness[es].")

The evidence cited by the Magistrate Judge is sufficient to infer that petitioner had a bona fide belief that he was in imminent danger of death or great bodily injury.  Detective George testified:

> Q. And when [Horton] initiated that conversation, what did he tell you?
>
> A. He told me it wasn't his fault.  He began to tell me that this was an accident, that Ricky was a friend of his.  He stated that he did not know that it was Ricky.  He made the comment that he saw somebody run across the street, run up from behind the vehicle he was sitting in.  He told me that he was struck in the face by this person with a clear colored beer bottle.  When that happened, he pulled a firearm that was in his waistband with his left hand, drew his arm up across his chest to fire it out the window to scare off the person.

7

> Q. Did he tell you what he did after that?
>
> A. At that point the driver of the vehicle sped off after all this took place, in a matter of seconds, I would imagine.

(Tr. Vol. III, 539:6-540:2.)

Detective George further testified that he prepared a supplemental report, which stated "he pulled the firearm out and pointed it out the window pulling the trigger to scare off a person, in turn shooting Ricky Joiner."  (Id. at 549:22-550:2.)

Anna Rukavina, petitioner's girlfriend, testified to the following:

> Q. What did Michael tell you?
>
> A. It took him awhile, but first he was pretty much just silent for a minute; and then he had told me that he thought he had killed somebody.
>
> Q. Did he tell you where that happened?
>
> A. He just said it was in the southwest.
>
> Q. What else did he tell you?
>
> A. He told me that they were supposed to go to a party, him and Mario; and when they got there, at first two girls came up and talked to them while they were still in the car. When those girls left the car, about fifteen guys, I think he said, came out of the house and surrounded the truck and --
>
> Q. Go ahead.
>
> A. Oh, I'm sorry.  Do you want me to keep --
>
> Q. Yeah, keep going.
>
> A. He said that they had surrounded the truck, and Mario asked who they were; and when Michael went to turn around to see who all was behind him and everything, he had got hit in the face with a beer bottle.

8

> Q. What did he do then?
>
> A. He said he went to shoot out the window to get everybody away from the truck.  They were surrounding like all four sides of the truck, and he was trying to back everybody away; and whoever hit him with whatever it was– I don't think he knew at the time what he had got hit with– but I think he was just trying to back everybody away from the truck.

(Id. at 565:14-566:23.)  A reasonable jury could thus infer that petitioner was afraid that he would be seriously injured or killed at the time he fired the gun.

### 3. Sufficient evidence was introduced to show that petitioner did not violate any duty to retreat or avoid the danger.

The Magistrate Judge found that evidence could support the third element in that petitioner was not in control of the vehicle and could not have driven the car away from the scene.  Respondent argues that petitioner had every opportunity to leave the party to avoid the oncoming danger of the approaching victim.  Respondent once again argues that the evidence shows that petitioner did not give his consent to drive away when the driver of the vehicle told him that they needed to leave.

As discussed above, the Court finds no evidence supporting respondent's contention that petitioner chose not to leave or refused to give consent to leave after the driver of the vehicle told petitioner that something was wrong and that they needed to leave.  The Court agrees with the Magistrate Judge's conclusion that petitioner was not in control of the vehicle.

Accordingly, the Court agrees with the Magistrate Judge's Report and Recommendation finding that the appellate court unreasonably applied *Trombetta* because it acknowledged facts that would have supported a reasonable jury concluding that petitioner acted in self-defense, but affirmed the trial court's refusal to instruct the jury on self-defense, thus denying petitioner's due

process right to present a complete defense for the jury's consideration.

### **CONCLUSION**

For the reasons set forth herein and in the Magistrate Judge's Report and Recommendation, the Petition for Writ of Habeas Corpus is GRANTED except as to petitioner's conviction and sentence for having a weapon while under disability in violation of Ohio Rev. Code § 2923.13(A)(3). Further, this Court hereby fully incorporates the Report and Recommendation by reference herein. Petitioner must be retried within 90 days of this Opinion or his conviction must be set aside.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 2/9/11